United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 20, 2006**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

No. 04-31061

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEFFERY P. OLINDE,

Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of Louisiana
(3:03-CR-143-ALL)

Before BARKSDALE, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Challenging his judgment of conviction by contesting the denial of his suppression motion for evidence seized at his house, pursuant to a search warrant, Jeffery P. Olinde claims: (1) the warrant lacked probable cause; and (2) the search exceeded the warrant's scope because it began three hours before the specified start-time and included a non-listed building. **AFFIRMED.**

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

On 27 June 2003, agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and state law enforcement executed a search warrant for Olinde's property. Shortly after 6:00 a.m., agents entered his driveway and saw him standing in the doorway of a shed located approximately ten feet behind his house. Olinde was ordered to exit the shed; instead, he moved further into it and appeared to throw something to the ground. As an agent approached the shed's entrance, Olinde continued toward the back, where he was apprehended. In plain view inside the shed, agents found methamphetamine and a loaded pistol.

Shortly after Olinde was apprehended, his wife drove up to the house. After she complied with an agent's request to exit her vehicle, agents discovered a pistol in it. A subsequent search of Olinde's house revealed, *inter alia*, ammunition for both pistols, as well as small plastic bags typically used for drug distribution.

Among other charges, Olinde was indicted for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and for possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). In moving to suppress the seized evidence, Olinde claimed the warrant was not supported by probable cause and the agents exceeded its scope by searching: (1) the shed; and (2) before the specified start-time. After an evidentiary hearing, the district court denied the motion,

holding: (1) the warrant was supported by probable cause; (2) because the search occurred during daylight hours, it complied with the warrant; and (3) the shed was located within the curtilage of the home and, therefore, fell within the warrant's scope. *United States v. Olinde*, No. 03-143-A (M.D. La. 18 Nov. 2003) (unpublished). Subsequently, Olinde was convicted.

## II.

Olinde raises the same claims on appeal. In that regard, a search warrant's scope is a question of law. *United States v. Russell*, 960 F.2d 421, 422 (5th Cir.), *cert. denied*, 506 U.S. 953 (1992). Such questions are reviewed *de novo*; findings of fact, for clear error. *E.g.*, *United States v. Gibbs*, 421 F.3d 352, 356-57 (5th Cir. 2005). The evidence is viewed in the light most favorable to the prevailing party. *Id.* at 357. Where, as here, the district court held an evidentiary hearing and relied upon live testimony in denying the motion, "the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witnesses". *United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005), *cert. denied*, __ S. Ct. __, 2006 WL 685153 (U.S. 20 Mar. 2006) (No. 05-5902).

## A.

Olinde claims the warrant lacked probable cause because its supporting affidavit relied upon statements made by Michael Bowman and Travis Burton, his wife's brother and father, respectively.

3

Olinde claims both are admitted methamphetamine users who owed him money and, therefore, had an interest in his being incarcerated. Additionally, he maintains their statements lack credibility because they conflict. According to Olinde, both Burton and Bowman claim to have seen him in possession of a firearm when he lent it to Burton, but they provide different dates for the event.

When deciding whether a search warrant is supported by probable cause, an alternative test is used. *See* **Gibbs**, 421 F.3d at 355. First, we determine whether the good-faith exception applies — if it does, the inquiry ends. *See* **id**. If it does *not* apply, we determine whether the warrant was supported by probable cause. *See* **id.**; **United State v. Laury**, 985 F.2d 1293, 1311 (5th Cir. 1993). The exception applies unless

> the issuing-judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; the issuing-judge wholly abandoned his judicial role in such a manner that no reasonably well trained officer should rely on the warrant; the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or the warrant was facially invalid.

**Gibbs**, 421 F.3d at 355 (quoting **United States v. Leon**, 468 U.S. 897, 923 (1984) (internal quotation marks omitted)).

The ATF Agent's supporting affidavit recited statements from four individuals who knew of Olinde's involvement with firearms and illegal drugs. First, the ATF Agent noted that Michael and David

4

Brown, Olinde's wife's brothers, had informed officials they had personal knowledge of Olinde's possession of illegal drugs and weapons. David Brown informed officers that Olinde kept two firearms in his home and was selling crystal methamphetamine. Michael Brown admitted purchasing methamphetamine from, and consuming it with, Olinde on several occasions. He also corroborated David Brown's statement about the firearms, stating he had observed two in Olinde's home. Olinde had explained to Michael Brown: he had his wife purchase one of the firearms; and he had let Travis Burton borrow one of them. (To the extent David or Michael Brown admitted engaging in illegal activity with Olinde, these statements were made against penal interest, boosting their credibility. *See **United States v. Satterwhite**, 980 F.2d 317, 323 (5th Cir. 1992).)

Second, the ATF Agent also based the affidavit on statements made by Travis Burton, who corroborated those by Michael Brown, admitting Olinde had loaned him (Travis Burton) a firearm. Third, the Agent used statements made by Olinde's wife, taped by her sister, that she (Olinde's wife) had two firearms in the house, which Olinde could not keep there because of his prior convictions.

These statements corroborate Olinde's having possession of illegal firearms and drugs. Therefore, it cannot be said the Agent's "affidavit [was] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable".

5

***Gibbs***, 421 F.3d at 355; *see also **Satterwhite***, 980 F.2d at 322. The good-faith exception applies.

B.

Olinde claims the search exceeded the warrant's scope in two respects: when it began; and the shed's being included. As stated, the scope is a question of law, reviewed *de novo*. ***Russell***, 960 F.2d at 422. In each instance, the good-faith exception controls.

1.

Because the search began shortly after 6:00 a.m., Olinde maintains it was not "in the day time - 9:00 A.M. to 10:00 P.M.", as specified on the warrant. He concedes it also allowed the search "at anytime in the day or night [where] reasonable cause has been established", but claims: the two provisions are contradictory; and the requisite reasonable cause had not been established for a search outside the specified 9:00 a.m. to 10:00 p.m. period. Thus, according to Olinde, the day-time clause, including the 9:00 a.m. start-time, controls.

The search occurred "in the daytime" as defined in Federal Rule of Criminal Procedure 41, which authorizes execution of a warrant "during the daytime, unless the judge *for good cause* expressly authorizes execution at another time". FED. R. CRIM. P. 41(e)(2)(B) (emphasis added). The Rule defines daytime as "between 6:00 a.m. and 10:00 p.m. according to local time". FED. R. CRIM. P.

6

41(a)(2)(B). It is undisputed that the search began no earlier than 6:00 a.m. Additionally, the issuing magistrate judge did *not* give a reason for limiting the search's start-time to 9:00 a.m.

In any event, no evidence suggests the officers executing the warrant acted in bad faith; their actions comported with "in the daytime", as defined by Rule 41. As stated, the good-faith exception applies. "[E]vidence is *not* to be suppressed ... where it is discovered by officers in the course of actions that are taken in good faith and in the reasonable, though mistaken, belief that they are authorized". *United States v. Majors*, 328 F.3d 791, 795 (5th Cir. 2003) (emphasis added) (quoting *United States v. De Leon-Reyna*, 930 F.2d 396, 400 (5th Cir. 1991) (en banc)).

2.

Concerning the shed's being searched, Olinde notes neither the warrant, nor the supporting affidavit, mentioned it. The Government contends searching the shed was a valid search of the premises specified in the warrant.

The warrant authorized the search of "[t]he *premises* of Jeffery and [Mrs.] Olinde[,] 9398 Kurt Kundler Road[,] Gonzales, Louisiana". (Emphasis added.) An attachment to the warrant provided:

> **The Premises**
> The residence of Jeffery Olinde and [his wife] is located at 9398 Kurt Kundler Road, Gonzales, Louisiana 70737. The residence is described as mobile home (trailer), white in color with green shutters and a tan roof.

7

Olinde's shed was only approximately ten feet from, and attached by an extension cord to, the house.

"[P]ractical accuracy rather than the technical precision governs in determining whether a search warrant adequately describes the premises to be searched". *United States v. Williams*, 687 F.2d 290, 292 (9th Cir. 1982). Thus, the physical description would "not limit the scope of the search to those specific areas, but instead [made] the premises to be searched more readily identifiable". *United States v. Griffin*, 827 F.2d 1108, 1115 (7th Cir. 1987), *cert. denied*, 485 U.S. 909 (1988). If "the warrant state[s] the physical address of the premises and [gives] a description of the residence[,] ... [t]he detached ... shed ... [is] the type of building[] [that is] ordinarily a part of residential property". *United States v. Earls*, 42 F.3d 1321, 1327 (10th Cir. 1994), *cert. denied*, 514 U.S. 1085 (1995).

In any event, the good-faith exception controls. The Agent who both requested and executed the warrant sought authority in his affidavit to search the "property present on the premises" located at Olinde's address. As a result, it would not have been unreasonable for the Agent to believe the warrant encompassed all property at the address, including the shed. (Because the good-

faith exception applies, whether the shed is within the house's curtilage, as well as the effect if it is, are pretermitted.)

III.

For the foregoing reasons, the judgment is

**AFFIRMED.**